# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-2646

_____

Calvin Withers,

*Plaintiff - Appellant,*

v.

Leon Johnson, Individually and in his Official Capacity as Circuit Judge of
Pulaski County Arkansas; Pulaski County, Arkansas,

*Defendants - Appellees.*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: April 14, 2014
Filed: August 15, 2014

_____

Before SMITH, COLLOTON, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Calvin Withers sued Leon Johnson individually and in his official capacity as a circuit judge in Pulaski County, Arkansas, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* Withers also sued Pulaski County for the same alleged statutory

violations. After dismissing without prejudice Withers's individual-capacity claims against Johnson under the ADA and the Rehabilitation Act, as well as several other federal and state-law claims that Withers had abandoned, the district court[1] granted summary judgment for Johnson and the County on the remaining claims and dismissed them with prejudice. Withers appeals, and we affirm.

## I.

Because we are reviewing a grant of summary judgment, we describe the facts in the light most favorable to Withers. From 2001 to 2011, Withers worked as an assistant bailiff for the First Division of the Pulaski County Circuit Court. In January 2011, Johnson replaced the previous circuit judge in that division, and Withers became an assistant probation officer under Johnson's supervision. According to Withers, his duties as assistant probation officer were to monitor probationers, document their compliance with court-imposed instructions, and provide reports to Johnson when probationers appeared in court. Physical exertion was rarely required, but on occasion Withers would lift objects weighing twenty-five pounds or more.

On March 17, 2011, Withers injured his back while working in the circuit court. He informed Johnson of the injury, sought medical treatment that day, and was cleared to return to work immediately with the restriction that he not lift more than ten pounds. Withers gave Johnson a copy of the medical release, and Johnson did not express any unwillingness to accommodate the ten-pound lifting restriction. Withers received further medical treatment the following week and was given additional restrictions on physical activity; each time, he provided Johnson with a copy of the medical release, and Johnson never objected to the restrictions. Finally, after an appointment on March 29, Withers's doctor placed him on "non-duty status."

---

[1]The Honorable D.P. Marshall, Jr., United States District Judge for the Eastern District of Arkansas.

Johnson sent Withers a letter on April 4 notifying him that he had "been placed on Family/Medical Leave as of April 1, 2011 in accordance with Pulaski County Policy."

On the afternoon of May 10, 2011, Withers's doctor cleared him to return to work, this time with a twenty-five-pound lifting restriction. According to Withers, he was capable of performing his core job duties as of that date. Withers called Johnson's office that day and left a voice message stating in its entirety: "[T]his is Calvin Withers, give me a call back." After receiving no response, Withers called and left another voice message on May 11: "[T]his is Calvin Withers, could you give me a call back, I left you a message yesterday, could you holler back at me." Neither message mentioned that Withers had been cleared to return to work. Again, Withers received no response from Johnson. On May 12, Withers called Linda Liddell, an employee in the County's human resources department, and left her a voice message.

On Friday, May 13, Withers called a law clerk in Johnson's office and "told her the situation . . . what the doctor said" and that he was trying to contact Johnson. The law clerk told Withers that Johnson had left for a judicial conference and that she did not feel comfortable giving him Johnson's mobile telephone number. She told him, however, that she would send Johnson a text message.

Johnson received a text message from the clerk that evening informing him that Withers was trying to reach him; the text message did not mention the reason for Withers's call. Approximately forty minutes after Withers spoke with the law clerk, he received a return phone call from Liddell, who told him that if he sent her a copy of the medical release, she would forward it to Johnson's office. Withers faxed Liddell a copy of the release on Monday, May 16, and she then sent a copy to Johnson's chambers.

In a letter dated May 16, 2011, Johnson informed Withers:

It has come to my attention that your attending physician released you to return to work on . . . May 10, 2011. According to [County Personnel Policy] Art. 1 § 19.B., you are required to <u>IMMEDIATELY</u> provide a copy of the release to your supervisor to determine your return to work date. Employees who fail to return to work as designated are considered to have resigned. The Human Resources Office advised you of your obligation to contact your supervisor last Tuesday. As of today, you have still not contacted your supervisor and provided a copy of the release; therefore, you are considered to have resigned your position.

Withers received the letter a few days later.

Withers filed suit against Johnson and the County in the district court on September 7, 2011. He twice amended the complaint, with his second amended complaint alleging violations of the FMLA, the ADA, the Rehabilitation Act, the Age Discrimination in Employment Act, and several provisions of Arkansas law. With respect to the claims at issue in this appeal, Withers alleged that after he was cleared to return to work, Johnson and the County "failed to reinstate [him] in violation of the FMLA and retaliated against him for requesting leave." In addition, Johnson and the County had "discriminated against [Withers] on the basis of his record of impairment, his real or perceived disability, as well as failed to accommodate him by granting him leave and terminating him and retaliated against him for taking leave," all in violation of the ADA and the Rehabilitation Act. In his summary judgment briefing, Withers agreed to dismiss without prejudice his state-law claims against both parties, his claims under the Age Discrimination in Employment Act, and his individual-capacity claims against Johnson under the ADA and the Rehabilitation Act.

The district court granted summary judgment for Johnson and the County on Withers's remaining claims. The court first concluded that Withers's claims against the County failed because the County was not his employer. As for the complaints against Johnson, the court rejected the FMLA claims because Withers had received

the leave he requested and because Johnson offered a legitimate and non-discriminatory reason for Withers's termination: his failure to provide immediate notice of his ability to return to work, in violation of County policy. The court rejected the ADA and Rehabilitation Act discrimination and retaliation claims because "no reasonable juror could find that [Johnson] fired Withers because of a less onerous restriction on lifting" than the restrictions Johnson previously had accepted without issue. Finally, the court dismissed the failure-to-accommodate claims under the ADA and the Rehabilitation Act because Withers never asked Johnson to eliminate marginal job functions that involved lifting heavy objects.

Withers appeals only the grant of summary judgment in favor of Johnson. We review the district court's grant of summary judgment for Johnson *de novo*, viewing the evidence and drawing all reasonable inferences in the light most favorable to Withers, the nonmoving party. *Kallail v. Alliant Energy Corporate Servs., Inc.*, 691 F.3d 925, 929 (8th Cir. 2012). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

II.

Withers appeals the district court's adverse grant of summary judgment on his claims under the ADA and the Rehabilitation Act. Withers contends that Johnson unlawfully discriminated against him on the basis of a disability (his back injury) by terminating him and by failing to accommodate his disability, and retaliated against him for requesting an accommodation. Discrimination under the ADA and the Rehabilitation Act encompasses both disparate treatment because of a disability and failure to provide reasonable accommodations to a qualified individual's known disability. The former requires proof of discriminatory intent, while the latter does not. *See Hill v. Walker*, 737 F.3d 1209, 1216-17 (8th Cir. 2013); *Peebles v. Potter*, 354 F.3d 761, 765-67 (8th Cir. 2004). As relevant to Withers's claims, "decisions

interpreting either the ADA or the Rehabilitation Act are applicable and interchangeable to claims under each statute." *Hill*, 737 F.3d at 1216 (internal quotation omitted).

## A.

Withers first argues that Johnson discriminated against him by terminating him because of his disability. The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The Rehabilitation Act similarly prohibits discrimination against any "otherwise qualified individual with a disability . . . solely by reason of her or his disability." 29 U.S.C. § 794(a). To establish discrimination under the ADA, a qualified individual with a disability must show that he has "suffered an adverse employment action as a result of the disability." *Huber v. Wal-Mart Stores, Inc.*, 486 F.3d 480, 482 (8th Cir. 2007). Because the record was fully developed on the motion for summary judgment, we may proceed to the ultimate question whether Withers presented a submissible case of intentional discrimination. *See Hill*, 737 F.3d at 1218-19.

In support of his claims, Withers argues primarily that Johnson's purported reason for his termination was illegitimate. Citing 29 C.F.R. § 1630.14(c), which permits an employer to require job-related medical examinations but forbids disclosure of examination records to non-supervisory staff, he argues that Johnson unlawfully fired him for failing to disclose his private medical information to non-supervisors. But the undisputed facts do not support the premise of Withers's argument: Johnson terminated Withers's employment because Withers violated the County's policy that he must immediately provide his *supervisor* with his medical release. Withers could have delivered a copy of his medical release directly to Johnson, as he did on the date of his injury and initial medical treatment. Instead, he left Johnson two telephone messages that did not mention his ability to return to work. A few days after receiving his release, Withers eventually contacted a human-

-6-

resources employee, who offered to deliver the release if he sent it to her, but Withers still did not immediately present the release. Even granting all reasonable inferences in Withers's favor, Withers has not shown that Johnson violated the ADA regulations.

Withers points out that Johnson's termination letter also cited another provision of County policy—concerning employees who fail to return to work as designated—that is inapplicable here. But Johnson's misconstruction of that portion of the policy does not suggest that his actions were motivated by discriminatory animus rather than Withers's failure immediately to give Johnson his medical release. Withers also points to Johnson's failure to return his calls as evidence of discrimination. But Withers's two phone messages did nothing more than request that Johnson call him back, and a failure to return two nondescript telephone messages does not support an inference of discrimination based on disability. When Johnson was presented earlier with information that Withers injured his back, it is undisputed that Johnson accommodated all of Withers's work restrictions without objection. *Cf. Chappell v. Bilco Co.*, 675 F.3d 1110, 1118 (8th Cir. 2012). No genuine issue of material fact exists for trial regarding whether Johnson discriminated against Withers on the basis of his disability.

B.

Withers also argues that Johnson discriminated against him by "not making reasonable accommodations" of his disability. 42 U.S.C. § 12112(b)(5)(A). On this claim, the employer's intent is not determinative. "Rather, discrimination occurs when the employer fails to abide by a legally imposed duty." *Peebles*, 354 F.3d at 767. We see no merit to Withers's claim. Withers acknowledges that Johnson abided by all of Withers's work restrictions and that Withers requested and received leave due to his back injury. Withers claims that he "intended to request that . . . marginal job functions be eliminated" upon his return to work, but Withers's employment ended for reasons unrelated to his disability before he made any such request. The

record demonstrates that Johnson accommodated all of Withers's known limitations during the period of his employment at issue.

## C.

Finally, Withers asserts that Johnson violated the ADA and the Rehabilitation Act by retaliating against him for requesting accommodations for his disability. The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). This court has held that a person who is terminated after making a good-faith request for an accommodation may pursue a retaliation claim under the ADA and the Rehabilitation Act, although the textual basis for these claims is unclear. *See Hill*, 737 F.3d at 1218; *see also Heisler v. Metro. Council*, 339 F.3d 622, 632 (8th Cir. 2003). "In any event, our precedent says that we treat retaliation claims under the two statutes interchangeably." *Hill*, 737 F.3d at 1218.

"To establish unlawful retaliation under the ADA, [Withers] must show that (1) [he] engaged in a statutorily protected activity, (2) the employer took an adverse action against [him], and (3) there was a causal connection between the adverse action and the protected activity." *Id.* We may assume for the sake of analysis, in light of *Heisler*, that Withers engaged in a statutorily protected activity by requesting leave time while he recuperated from his back injury. And termination is an adverse action. But Withers fails to establish a genuine issue for trial regarding the requisite causal connection between the two. Johnson's termination of Withers for failing immediately to provide him a copy of the medical release was lawful, and Withers was not required to disclose his medical information to non-supervisors. Withers offers no evidence that retaliation was the true motive for the firing. Withers mentions the temporal proximity of his leave to his termination, but timing alone is

not sufficient to create a genuine issue of fact, particularly given that Johnson's proffered reason for the termination arose in the same window of time. *See Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1114 (8th Cir. 2001). The district court thus properly granted summary judgment for Johnson on Withers's claim of unlawful retaliation.

## III.

Withers also argues that Johnson interfered with his entitlement to FMLA leave by requiring him to fax his medical release to the circuit court or otherwise to disclose his private medical information to personnel other than Johnson in order to return to work. An employee who takes FMLA leave is entitled, with exceptions not relevant here, to be restored to a position that is the same as, or substantially equivalent to, his position when leave began. 29 U.S.C. § 2614(a). FMLA regulations permit an employer to require a medical clearance as a condition of restoring the employee to his position, 29 C.F.R. § 825.312(a)-(b), but the regulations—like those under the ADA—require that those records be kept confidential from non-supervisory personnel. *Id.* § 825.500(g). FMLA regulations also provide that "[a]ny violations of the Act or of these regulations constitute interfering with . . . the exercise of rights provided by the Act." *Id.* § 825.220(b). As previously discussed, however, Johnson did not require Withers to disclose his medical information to non-supervisory personnel. Johnson terminated Withers for violating County policy requiring him immediately to deliver the medical clearance to Johnson. That policy was lawful, and Withers could have complied in the same manner that he had in the past. Withers failed to make a submissible case of interference with his FMLA rights.

\*　　\*　　\*

The judgment of the district court is affirmed.

_____

-9-