# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-1771
_____

Malik Weatherly

*Plaintiff - Appellant*

v.

Ford Motor Company

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: February 16, 2021
Filed: April 19, 2021
_____

Before SMITH, Chief Judge, ARNOLD and STRAS, Circuit Judges.
_____

ARNOLD, Circuit Judge.

After Ford Motor Company fired Malik Weatherly, an assembly-line worker at one of its plants, Weatherly sued, asserting that Ford had terminated him (twice), and had taken other adverse employment action against him, because of his asthma and scoliosis. He laid claims under the Family and Medical Leave Act, the Americans with Disabilities Act, and the Missouri Human Rights Act. The district court dismissed Weatherly's FMLA claims as time-barred, and it dismissed his ADA and

MHRA claims on the ground that he had failed to exhaust his administrative remedies. Weatherly appeals these dismissals, and we affirm in part and reverse in part.

At this stage of the case, we accept as true the facts alleged in the complaint. *See Blomker v. Jewell*, 831 F.3d 1051, 1055 (8th Cir. 2016). For about the first year and a half of Weatherly's employ, Ford excused him from working on days when he suffered from asthma complications. But about a week after Weatherly submitted paperwork to Ford seeking intermittent FMLA leave, he was suspended for thirty days because, according to Ford, Weatherly had missed too much work. Less than a year later, after Weatherly missed work for asthma complications, Ford terminated him.

Weatherly filed charges with the Missouri Commission on Human Rights and with the Equal Employment Opportunity Commission, and a few months later Ford rehired him but put him in a new position that was more physically demanding. Weatherly informed his supervisor that his new duties aggravated his scoliosis, and when he arrived to work one day with doctor-recommended physical restrictions, Ford terminated him once again. As a result, Weatherly filed another administrative charge with the MCHR and the EEOC.

We begin with the court's dismissal of Weatherly's FMLA claims. The FMLA allows eligible employees to take up to twelve weeks of unpaid leave during a twelve-month period to deal with a serious health condition. *See Garrison v. Dolgencorp, LLC*, 939 F.3d 937, 944 (8th Cir. 2019); *see also* 29 U.S.C. § 2612(a)(1)(D). In his amended complaint, Weatherly claimed that Ford interfered with his FMLA rights when it suspended him and that it suspended him in retaliation for his asking about and requesting FMLA leave. *See* 29 U.S.C. § 2615(a). The statute of limitations for FMLA claims is two years for ordinary violations and three years for willful ones. *See id.* § 2617(c)(1)–(2). A violation is willful if "the employer either knew or showed

reckless disregard for the matter of whether its conduct was prohibited by the statute." *See Hanger v. Lake Cty.*, 390 F.3d 579, 583 (8th Cir. 2004). Because Weatherly did not bring suit until about a month after the second anniversary of the suspension in question, these FMLA claims are barred unless the alleged violations were willful.

The district court held that Weatherly filed his claims too late. It pointed out that, though he alleged that Ford acted willfully in other parts of the complaint, he did not allege willfulness with respect to these FMLA claims. On appeal, Weatherly maintains that, while he did not plead willfulness specifically, the court "ignored reasonable inferences supported by the facts alleged" that Ford willfully violated the FMLA. Weatherly relies most heavily on allegations in his complaint that "Ford failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination against its employees" and that "Ford failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the laws, including the FMLA." As a result, he says, "[i]t is not apparent from the face of [the] Complaint that his FMLA claims are time barred." Ford responds that these allegations demonstrate at most that Ford acted negligently, not willfully, and so the two-year limitations period applies.

We think that Weatherly's allegations are sufficient to support a claim, which is all he must show to survive a Rule 12(b)(6) motion to dismiss. FMLA claims like those Weatherly asserts do not depend on whether a defendant acted willfully because a defendant's willfulness is not an element of the claim. A defendant may, of course, raise the applicable statute of limitations as an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), and it is true that courts may sometimes dismiss claims properly under Rule 12(b)(6) "as barred by a statute of limitations if the complaint itself shows that the claim is time-barred." *See Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 897 (8th Cir. 2015). But it is also true that, in general, a defendant cannot render a complaint defective by pleading an affirmative defense, and so the possible existence of a limitations defense "is not ordinarily a ground for Rule 12(b)(6) dismissal unless the

complaint itself establishes the defense." *See Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008).

So the relevant question is how a complaint might establish a limitations defense. Ford invokes *Crugher v. Prelesnik*, 761 F.3d 610 (6th Cir. 2014), which similarly involved an FMLA claim filed more than two years but less than three years after the claim accrued. In that case, the court rejected the argument that the plaintiff had alleged a willful FMLA violation because the allegations in the complaint were insufficient to "make the state-of-mind allegation 'plausible on its face,'" *id.* at 617, a pleading standard for gauging the sufficiency of a complaint that the Supreme Court introduced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It's unclear whether the parties or the court ever questioned whether *Twombly* and *Iqbal* supply the standard governing the sufficiency of an allegation relating to an affirmative defense and not to the substance of a claim.

Other cases are more illuminating and persuasive than *Crugher*. For example, in *Fernandez v. Clean House, LLC*, 883 F.3d 1296 (10th Cir. 2018), a plaintiff brought a claim under the Fair Labor Standards Act, a statute that has a two-tiered limitations scheme identical to the one in the FMLA—the limitations period for ordinary violations is two years and for willful ones it is three years. *See id.* at 1298; *see also* 29 U.S.C. § 255(a). The plaintiffs' claims accrued more than two years but less than three years before they filed suit. *Fernandez*, 883 F.3d at 1298. The district court dismissed the claims on the ground that the plaintiffs had not supported their allegations of willfulness with sufficiently specific facts. *See id.*

The Tenth Circuit reversed. It explained that the district court and the defendants had "fail[ed] to recognize that willfulness is not relevant to the elements of Plaintiffs' claims but only to the statute-of-limitations defense," and under the Federal Rules of Civil Procedure, it is the defendant's responsibility to raise and prove that matter, not the plaintiff's responsibility to refute it in his complaint. The court

held that plaintiffs do not need to anticipate in the complaint that a defendant might raise a particular affirmative defense, and what's more plaintiffs need not even respond to an answer raising such a defense with additional pleadings. While it recognized that it may be proper on occasion to dismiss a claim on the pleadings based on an affirmative defense, the court said that was appropriate "only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." In other words, the complaint would have to admit that the violations were not willful; it wasn't enough that it did not plead facts sufficient to show that it was willful. *Id.* at 1298–99. In sum, the defendant would have to wait until summary judgment to press the defense.

In *Xechem, Inc. v. Bristol-Myers Squibb Co.*, Judge Easterbrook, writing for the court, likewise held that "plaintiffs need not anticipate and attempt to plead around all potential defenses," and so "[c]omplaints need not contain *any* information about defenses and may not be dismissed for that omission." 372 F.3d 899, 901 (7th Cir. 2004) (emphasis in original); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Instead, it's "[o]nly when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Xechem, Inc.*, 372 F.3d at 901. That court has doubled down on this view after *Twombly* and *Iqbal*, noting that neither decision scrapped the rule that complaints need not anticipate affirmative defenses. *See Levin v. Miller*, 763 F.3d 667, 671 (7th Cir. 2014).

The Tenth and Seventh Circuits' cases are more persuasive. It may well be that Weatherly's allegations of willfulness (or more accurately the allegations from which Weatherly thinks willfulness may be inferred) do not plausibly assert that Ford committed willful FMLA violations. But we need not reach that question. The important thing is that Weatherly's complaint does not plead him out of court by establishing that the alleged violations were not willful. The complaint leaves ample ground from which proof of willfulness may grow; there may be evidence that Ford's

failure to establish and enforce certain policies or perform certain training was willful rather than negligent. If at summary judgment Weatherly cannot muster sufficient evidence to permit a reasonable factfinder to find that Ford acted willfully, then the district court can side with Ford on its limitations defense. But at the pleadings stage, Weatherly has alleged all that the law requires.

Ford points to some cases of ours to support its contention that dismissal on limitations grounds was proper here, but we are not persuaded. *Hanger*, for example, was decided on summary judgment and not on the pleadings, *see* 390 F.3d at 582, so it provides no guidance. In *Smithrud v. City of St. Paul*, 746 F.3d 391, 396 (8th Cir. 2014), we dealt with a limitations period that did not depend on any facts other than the passage of time. When the plaintiff attempted to avoid the dismissal of his facially time-barred complaint by asserting that he was entitled to equitable tolling, we pointed out that he had pleaded himself out of court by alleging facts showing that he did not act with the diligence needed to demonstrate that equitable tolling was appropriate. *Id.* So we conclude that the district court erred when it dismissed Weatherly's FMLA claims on limitations grounds.

We turn next to the four remaining claims at issue in this appeal to determine whether the district court properly concluded that Weatherly had not administratively exhausted them. Under the ADA, plaintiffs must exhaust their administrative remedies by filing a charge with the EEOC before filing a lawsuit against an employer. *See Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 919 (8th Cir. 2018); 42 U.S.C. §§ 12117(a), 2000e–5(e)(1). Weatherly filed administrative complaints, but the question is whether they raised the specific claims he now brings.

Our exhaustion cases have recognized that, though we construe administrative charges liberally, we will not invent, *ex nihilo*, a claim that was not made before the relevant agency. *See Sellers v. Deere & Co.*, 791 F.3d 938, 943 (8th Cir. 2015). We will consider those claims specifically raised and those that are "like or reasonably

related to the administrative charges that were timely brought." *See Wedow v. City of Kansas City*, 442 F.3d 661, 672 (8th Cir. 2006). Over time, we have "considerably narrowed our view" of the type of claim that could be considered "like or reasonably related to" properly exhausted claims, *see id.*, so that we now require that "[e]ach incident of discrimination and each retaliatory adverse employment decision . . . be individually addressed before the EEOC." *See Sellers*, 791 F.3d at 943. Despite this refinement, we have occasionally deemed a claim so like or reasonably related to an exhausted claim that we have let it proceed. *See, e.g.*, *Wedow*, 442 F.3d at 674. The key is that the scope of a judicial complaint can be no broader than the scope of the EEOC investigation that "could reasonably be expected to grow out of the charge" in the EEOC complaint. *See id.*

In the district court, Weatherly raised three ADA claims relating to his scoliosis—that Ford failed to accommodate his disability, that it discriminated against him because of his scoliosis, and that it retaliated against him because he informed Ford that he had scoliosis and because he requested accommodations. He maintains that he exhausted these three claims when he filed his second administrative charge.

We disagree. Weatherly's second administrative charge makes scant mention of his disabilities. The charge concentrates instead on his first administrative complaint, blaming it for the adverse employment actions that Weatherly suffered. The first line of the charge narrative says, "I filed a Charge of Discrimination with [MCHR] after I was terminated on 6/11/2017." The concluding sentence reads, "I believe I was denied my benefits and terminated in retaliation to the Charge of Discrimination I filed." Weatherly never alleged in that charge that his scoliosis, or his requests for scoliosis accommodations, had anything to do with his termination, and so we cannot say these three ADA claims have been exhausted.

There's another reason the district court correctly held that two of these three claims—the accommodation and discrimination claims—were unexhausted.

-7-

Weatherly marked only the box next to "RETALIATION" on the relevant form and not the box next to "DISABILITY," which he likely would have marked if he was claiming disability discrimination—he marked the disability box in his first administrative charge. The narrative portion of the charge, moreover, states unambiguously that Weatherly was claiming unlawful retaliation. We have long treated discrimination and retaliation claims as distinct for exhaustion purposes, so that exhausting one does not usually exhaust the other. *See, e.g.*, *Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 539–40 (8th Cir. 2020); *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 989 (8th Cir. 2011). And given the clear focus of the administrative charge on the earlier administrative charge that Weatherly filed, we cannot say that the discrimination claim (based on a wholly separate disability) Weatherly raises in court is sufficiently related to the administrative charge for it to be considered exhausted. *See Tyler*, 628 F.3d at 989. Since an accommodation charge is a type of discrimination charge, *see Withers v. Johnson*, 763 F.3d 998, 1003 (8th Cir. 2014), it too fails for this additional reason.

Weatherly's final claim was that Ford violated the MHRA when it terminated him the first time because of his asthma. The district court held that Weatherly had failed to exhaust this claim. *See* Mo. Rev. Stat. § 213.075.1. The parties agree that the standards governing administrative exhaustion under the ADA and the MHRA are the same, *compare Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 630–31 (8th Cir. 2000), *with Kerr v. Mo. Veterans Comm'n*, 537 S.W.3d 865, 874 (Mo. Ct. App. 2017), and we will proceed under that assumption.

To support his contention that he exhausted this claim, Weatherly points to his first administrative complaint where he alleged that Ford had terminated him for missing work even though he had accrued enough paid time off to cover an asthma-related absence. He concluded that charge by saying that Ford had "failed to reasonably accommodate my disability."

The district court held that Weatherly did not exhaust this claim because the focus of the administrative charge was Ford's failure to accommodate, not the allegedly discriminatory termination he now complains of. Though this issue is a close call, we hold that Weatherly exhausted the claim because an EEOC investigation into Weatherly's termination "could reasonably be expected to grow out of the charge" made in Weatherly's administrative complaint. *See Wedow*, 442 F.3d at 674. After all, Ford simultaneously terminated Weatherly instead of accommodating his request to use paid time off to cover for his asthma-related absence. We do not mean to suggest that every time a plaintiff asserts in an administrative charge that an employer failed to accommodate his disability, the plaintiff has necessarily exhausted any discrimination claim he might later raise in court. But sometimes, as here, a failure to accommodate is so closely linked to an adverse employment action that it is reasonable to think that the scope of the administrative investigation would have included a review of that adverse action.

Ford correctly points out (as the district court did) that claims for failing to accommodate and for unlawful discrimination are distinct in that an accommodation claim does not require that the employer intended to discriminate, whereas an unlawful-discrimination claim does. *See Peebles v. Potter*, 354 F.3d 761, 766–67 (8th Cir. 2004). But we don't think that distinction matters in this case because, once again, an administrative investigation into Weatherly's allegations would likely have included a look into whether Ford unlawfully discriminated against Weatherly when it terminated him despite his request for accommodation. Weatherly's accommodation and termination claims are two sides of the same coin, and claims closely connected in this way should be allowed to proceed, if we aren't to give mere lip service to the duty to construe administrative complaints liberally.

The district court also observed that "simply stating that you missed work due to a disability is different tha[n] alleging that your employer fired you *because of* your disability." That's true in a sense, but Weatherly's administrative charge suggests that

-9-

he was fired for his absences and that Ford knew his absence was caused by his disability. So if a disability caused missed work, and missed work caused termination, it doesn't seem like much of a stretch to conclude that Weatherly adequately alleged in his administrative charge that his disability caused his termination. To conclude otherwise would be to elevate form over substance.

In sum, we conclude that Weatherly has cleared the exhaustion hurdle on his MHRA claim but has pulled up short on his three ADA claims.

We reverse and remand for additional proceedings on Weatherly's FMLA and MHRA claims and affirm the dismissal of his scoliosis-related ADA claims.

_____